**Opinion issued February 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00977-CR

_____

## DONALD COREY HILL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 05-DCR-043338**

---

## MEMORANDUM OPINION

Appellant Donald Corey Hill appeals the trial court's judgment revoking his community supervision and sentencing him to six years' confinement. In his sole issue, appellant argues that the trial court abused its discretion by revoking

community supervision and adjudicating him guilty because the State failed to prove he violated the conditions of his community supervision.

We affirm.

## BACKGROUND

In October 2007, appellant pleaded guilty to the second degree felony offense of Attempted Aggravated Sexual Assault of a Child. The trial court deferred adjudication of guilt and placed appellant on 10 years' community supervision. The court attached numerous conditions to appellant's deferred adjudication.

In October 2008, appellant's Community Corrections Office filed a Motion for Modification of probation's conditions of probation—which was granted by the trial court—because "The Defendant repeatedly lies to his community corrections officer, has missed five sex offender counseling groups, and missed a polygraph on September 19, 2008." Accordingly, the officer requested that the conditions of probation be modified to include:

> The Defendant shall remain in home confinement under electronic monitoring (BI) at the following address, to-wit: "14223 BRUNSWICK POINT LANE, HOUSTON, TEXAS 77047", under the supervision of the Fort Bend County Community Supervision and Corrections Department beginning on October 17. 2008 and to continue to remain there at all times except for the following circumstances, to-wit: (1) permission from the Community Corrections Officer for the purpose of employment and/or counseling, community service or (2) reporting to the Community Corrections Officer as arranged;

In September 2008, September 2009, November 2009, November 2010, and January 2011, the State filed Motions to Adjudicate Guilt on various grounds, including not timely complying with sex offender registration requirements, failing to timely complete community service, failing to pay various fees, unexcused absences from mandated sex offender treatment program, suspension from sex offender treatment program, prohibited contact with minor children, missing a scheduled polygraph test, prohibited possession of more than one device with internet access (including one with videos depicting unauthorized contact with minor children), violation of curfew at least 45 times, failing to attend, participate and successfully complete sex offender counseling, missing a scheduled appointment with his community supervision officer, unauthorized use of Houston Community College Computer lab, and possession of pornography on an unauthorized cell phone.

On November 9, 2011, the trial court signed an order entitled "Judgment – Adjudication of Guilt – Continuation of Deferred Adjudication Granted." That order chronicled appellant's violations and provided: "Defendant will continue on Deferred Adjudication with additional conditions. (1) 180 days in jail, (2) within 30 days from his release, defendant is to bring current all costs and fees which are currently in arrears."

## A.    The November 2013 Motion to Adjudicate Guilt

Almost two years after appellant was released from his confinement resulting from the November 2011 order continuing his deferred adjudication, the State again filed a motion to adjudicate guilt, in November 2013, alleging:

> [W]hile the Defendant's probation was in full force and effect, the Defendant did violate the terms and conditions of his probation by:

- The Defendant failed to report, in person, to the Fort Bend County Community Supervision and Corrections Department for the months of June, July, September and October 2013 and one time in August 2013;

- The Defendant failed to work faithfully at a suitable employment as far as possible for the months of June, July, August, September and October 2013;

- The Defendant failed to pay to the Fort Bend County Community Supervision and Corrections Department a fee of $60.00 for the months of March, April, May, June, July, August, September and October 2013;

- The Defendant failed to pay a fee for alcohol/drug testing to the Fort Bend County Community Supervision and Corrections Department within ten (10) days of the giving of a specimen for tests conducted on April 24, 2013 and May 13, 2013;

- The Defendant failed to attend, participate in, and successfully complete sex offender counseling at the Center for Healthy Sexuality Restitution and Responsibility Treatment Program as evidenced by missing his group on August 23, 2012, September 13, 2012, October 25, 2012, January 10, 2013, February 7, 2013, April 18, 2013, June 4, 2013, June 13, 2013, June 29, 2013, July 5, 2013, July 11, 2013, July 18, 2013, July 25, 2013, August 1, 2013, August 8, 2013, and August 15, 2013, and further evidenced by the Defendant being unsuccessfully discharged from treatment on August 20, 2013;

- The Defendant failed to be responsible for any costs of the program as evidenced by being delinquent in the amount of $640.00 for treatment

service fees to The Center for Healthy Sexuality Restitution and Responsibility Treatment Program;

- The Defendant failed to attend, participate in, and successfully complete a sex offender treatment program with a Registered Sex Offender Counselor approved by his Community Corrections Officer, as evidenced by being unsuccessfully discharged from The Center for Healthy Sexuality Restitution and Responsibility Treatment Program on August20, 2013 due to excessive absences;

- The Defendant [failed to] pay a Sex Offender Supervision Fee of $5.00 per month through the Community Supervision and Corrections Department for the months of March, April, May, June, July, August, September and October 2013.

## B. The November 2014 Hearing

A hearing was held on the motion to adjudicate, at which several witnesses testified for both the State and appellant.

### 1. State's case

Timothy Olier, appellant's community supervision officer, testified that he assumed supervision of appellant's case in February 2013. Olier testified that a condition of appellant's supervision was that he report to Olier in person twice each month, and that—in violation of that requirement—appellant failed to report at all in June, July, September, and October of 2013, and missed one of his two visits in August 2013.

Olier also testified that appellant told him that he was employed by Federal Express, but that, upon verification, Federal Express sent written documentation in October 2013 that appellant had never been an employee. To Olier's knowledge,

appellant was unemployed in June, July, August, September, and October 2013, which was a violation of the probation requirement that appellant maintain suitable employment. Lying and misleading Olier about his employment was an additional violation of the appellant's probation conditions.

Olier next testified that appellant failed to pay his required probation fees for March, April, May, June, July, August, September, and October 2013; appellant also failed to pay for the drug tests conducted April 24, 2013 and May 13, 2013, which also violated his probation conditions.

When Olier took over appellant's case, he learned that appellant had missed some of his required sex offender therapy previously, and then—after Olier took over his case in February 2013—appellant missed additional therapy sessions in violation of the conditions of his probation. Specifically, appellant missed sessions on August 23, 2012, September 13, 2012, October 25, 2012, January 10, 2012, Februray 7, 2013, April 18, 2013, June 6, 2013, June 13, 2013, June 20, 2013, July 5, 2013, July 11, 2013, July 18, 2013, July 25, 2013, August 1, 2013, August 8, 2013, and August 15, 2013. These absences led to appellant's discharge from the program as unsuccessful on August 20, 2013, which was an additional violation of his probation conditions.

In addition, Olier testified that—in violation of appellant's probation conditions—appellant was delinquent $640 in treatment fees for sex offender

counseling and, he did not pay his $5 sex offender supervision fee in March, April, May, June, July, August, September, or October of 2013.

At the end of May 2013, appellant contacted Olier and told him that he was ill and in the hospital. Olier told him that he needed to provide documentation of that hospitalization and contact Olier upon release. Appellant provided a document that, in Olier's opinion, did not appear to be legitimate. It stated that appellant had leukemia, but was not signed by the doctor that supposedly submitted it. Appellant did not provide any additional medical records or documentation.

In July 2013, appellant called and reported to Olier that he was in the hospital with a broken hip and, in August 2013, he called Olier to report that he was in the hospital awaiting a kidney transplant from his girlfriend. Olier asked for documentation. Appellant told him that the hospital would fax documentation about the cancer and broken hip, but Olier never received any such fax. In August 2013, appellant told Olier that his girlfriend had gotten copies of the medical information and would bring the documents to Olier that day, but she never showed.

On August 22, 3013, appellant reported to Olier's office in person, and had no outward apparent physical signs of medical problems. In Olier's opinion, appellant looked perfectly healthy.

In September 2013, when appellant again failed to report to Olier's office, Olier searched the Internet and found pictures appellant had posted of his recent wedding and a narrative of his life with his new wife.

Finally, Olier testified that his department's goal is to ultimately assist people in completing their supervision. The department addresses noncompliance issues and tries to direct probationers to get them back on track. If delinquency in fines are an issue, the department will work out a payment plan. If there is a medical condition, the department will work with a probationer, but will require proper and complete documentation. Olier stated that he attempted to assist appellant in succeeding, but that appellant did not cooperate or do anything to demonstrate that he is interested or trying to come into compliance with the terms of his supervision. Olier did not believe that appellant was truthful with him through much of his time under supervision.

Kim Cabrera, a community corrections officer, testified that she is the court liaison officer for the trial court. One of her job duties is to ensure that defendants placed on deferred adjudication receive a copy of—and understand—the judgment and the applicable conditions and requirements before they leave the courtroom. She also testified that once a defendant meets with their probation officer, which usually happens the week after the court's judgment is signed, the defendant is

again explained all the conditions and requirements, and the defendant's background information is collected.

Cabrera explained all of the conditions to appellant when he was first placed on deferred adjudication, and again when the State filed several times to adjudicate guilt based on violations of those conditions. She testified that appellant was given many opportunities to successfully comply with probation conditions. She said that on the one hand, appellant was always respectful in person, but that he would not follow through with things that he said he would do. Appellant's mother was very negative about her son's probation, and did not respond to the department's request for her to help appellant become compliant. Cabrera has only two medical records in her file related to appellant—the form referencing leukemia, and hospital discharge paperwork from April 2013. Her department was unable to determine the legitimacy of the first form, as appellant did not give the department permission to independently seek his medical records.

Cabrera said that during the pendency of the current motion to adjudicate, appellant has not made any effort to come into compliance with the conditions of his probation.

### 2. Appellant's case

Appellant's mother, Sylvia Hill, testified that appellant currently works as a manager at Capp Electric. As a young child, appellant was diagnosed with

parvovirus, which they later learned—when appellant was 9 years' old—was actually acute anemia. Over the years, the diagnosis was never clear, but he had on-and-off problems that were associated with either leukemia, sickle-cell, or anemia.

She testified that, in appellant's early 20s, after he was on probation, he started having more health problems, but it was never clear what was wrong. According to Hill, appellant suffered headaches, vomiting, and had a blood transfusion. In May or June of 2013, appellant was told that the symptoms were a part of having leukemia, or that he could "possibly" have such a cancer. She conceded that he was never actually diagnosed with cancer. But appellant could not work, was fatigued and, with another hospitalization, he was told he had immunodeficiency syndrome.

She testified that appellant felt too bad to do many of his probation visits, but that he could not go to the doctor because he lacked insurance coverage. She opined that despite missing probation visits, sex offender counseling, and getting behind on payments, appellant did the best he could to comply with his probationary terms, given the circumstances.

She further opined that medical reasons were the only reason that appellant did not successfully complete his probation conditions. In addition to the blood and immune system issues, he was diagnosed with pneumonia in April of 2013,

and then had an allergic reaction to the medication. She testified that appellant hurt his hip, but did not break it, playing in July 2013, which prevented him from complying with his probation requirements. Then, in August, acute anemia was in appellant's blood that could impact his kidneys, so he had a series of blood transfusions.

Finally, Hill testified that appellant's health had improved since the motion to adjudicate guilt was filed because medications were helping, and that he could, given one more chance, comply with all his probation terms. Also, because he is now employed, he can pay for the transfusions he needs to feel better. She testified that while she had medical records from when appellant was a young child, she did not have any documentation about his recent medical issues or treatments.

Katrina Hill, appellant's wife, next testified about the health problems she has known him to have since 2009, the year they met. She testified that appellant's medical problems often prevented him from complying with his probation requirements. She claimed he has been in the hospital too many times for her to count, and he was regularly ill and in great pain. Sometimes transfusions helped, sometimes they did not.

Finally, Katrina testified that appellant's health has been better since the motion to adjudicate guilt was filed, and he is able to work and has insurance. She believes he just needs one more chance to get everything done.

On cross-examination, she conceded that appellant had insurance from August 2013 to October 2014—so he had access to the medications and care that made him better—but he did not make any attempts to get into compliance with his probation. Katrina did not have any of appellant's medical records to provide.

Larry Hill, appellant's father, testified about appellant's medical problems as a child. He explained that blood transfusions were paid for by his insurance through dependent care until appellant reached the age he could no longer be covered. After that, they relied upon the emergency room.

Larry produced medical records for appellant from August 2014, reflecting that appellant had multiple blood transfusions. These were admitted into evidence, as well as other medical records Larry produced from appellant's childhood medical care.

He testified that it was appellant's medical problems that prevented him from complying with his probation conditions. He conceded that appellant was actually not diagnosed with cancer (even though at one point doctors had not ruled that out), and that appellant had not broken his hip or had a kidney transplant. Rather, appellant suffered a hip injury and needed a blood transfusion to eliminate the possibility of kidney complications. Larry testified that he did not have any of appellant's medical records from 2013.

Appellant testified on his own behalf. He explained that since starting his job in August 2014, he has insurance and can afford transfusions that make him feel better. After he served his 180 days in jail on the last motion to adjudicate guilt, he committed to try his best to complete his probation.

In 2010, appellant began to get sick again and started receiving blood transfusions. In 2013, he was cut off from his father's insurance coverage, and at that time he was diagnosed with immunodeficiency syndrome. One symptom he suffered regularly was debilitating migraine headaches.

Appellant testified that he had pneumonia and an allergic reaction around April 2013. And then, in May or June or 2013, he was diagnosed with leukemia after he had a bout with the flu. He could not always report to his probation officer because he was sick, exhausted, and in pain. He claimed though, that he stayed in touch with Olier, his probation officer at the time, who told him to just call when he was feeling better. With his weakness and pain, he thought he had a broken hip in August of 2013. Appellant testified that he told Olier in August 2013 that he had kidney stones, and that he needed blood transfusions. He denied telling Olier that he needed a kidney transplant.

Appellant also claimed that his health issues prevented him from working. He testified that he did everything to the best of his ability to make his probation

work, but he was physically unable to comply with the probation requirements for the months of June, July, September, and October of 2013.

In August 2013, around the time the motion to adjudicate was filed, his health started improving and he got a job and insurance. Appellant testified that, as the date of the hearing in November 2014, nothing would currently keep him from successfully complying with his last three years of probation. Given the chance, he testified that he would start by paying his fees, keeping regular doctors' appointments to stay healthy, and continuing at his job. He also claimed that he would do the required sex offender counseling and complete the mandated program.

On cross examination, appellant conceded that he had not paid any probation fees since his release from custody, despite having had a job the last two months. His plan instead was to save up over a period of time a lump sum to get current.

Appellant claimed that Olier was untruthful on the stand about several things. He disputed Olier's testimony that appellant had not stayed in contact with him while he was sick, and he disputed Olier's testimony that appellant told him he had a kidney transplant.

Appellant also conceded that he was not sick during January, February, March, April, and May of 2013. He claims he did his best to comply during that period. He also conceded that he was physically able to do all his probation in

August, September, and October of 2012. Appellant disputed the accuracy of his wife's testimony that for the year before the hearing, appellant had access to insurance and had been medically okay. He also disputed Cabrera's testimony that he had not made attempts to get into compliance with his probation terms in the past year.

Appellant testified that, contrary to Olier's testimony, every time appellant was released from a hospital stay, he provided documentary proof to Olier. Olier's testimony to the opposite, according to appellant, was untruthful. Appellant claims to have provided to Olier much more than the two documents Olier acknowledged receiving. Appellant also told the court that he did not have any medical documents reflecting his care or hospitalizations from 2013, but that his lawyer had copies of those records. Other than the limited records produced by his father, no medical records were introduced by appellant.

## C. The Judgment

After closing arguments, the trial court announced that it was granting the State's motion to adjudicate guilt, acknowledging that appellant had been sick over time, but nonetheless faulting him for failing to comply with the probation conditions he was capable of performing and for failing to take advantage of opportunities to communicate to the probation department and document illnesses.

The court announced a sentence of six years' confinement with credit for time served.

The trial court's November 6, 2014 judgment found the following alleged probation violations true:

- The defendant failed to report, in person, to the Fort Bend County Community Supervision and Corrections Department for the months of June, July, September, and October 2013 and one time in August 2013;

- The defendant failed to work faithfully at a suitable employment for the months of June, July, August, September and October 2013;

- The defendant failed to pay to the Fort Bend County Community Supervision and Corrections Department a fee of $60 00 for the months of March, April. May, June, July, August, September and October 2013;

- The defendant failed to pay a fee for drug/ alcohol test within 10 days of giving the specimen for tests conducted on April 24, 2013, and May 13, 2013;

- The defendant failed to attend, participate in, and successfully complete in sex offender counseling at the Center for Healthy Sexuality Restitution and Responsibility Treatment Program as evidenced by missing his group on August 23, 2012; September 13, 2012; October 25, 2012; January 10, 2013; February 7, 2013; April18, 2013; June 4, 2013; June 29, 2013; July 5, 2013; July 11, 2013; July 18, 2013; July 25, 2013; August 1, 2013; August 8, 2013 and August 15, 2013, and further evidenced by the defendant being unsuccessfully discharged from treatment on August 20, 2013.

- The defendant failed to be responsible for any costs of the program as evidenced by being delinquent in the amount of $648.88 for treatment service fees to the Center of Healthy Sexuality Restitution and Responsibility Treatment Program;

- The defendant failed to attend, participate in, and successfully complete a sex offender treatment program with a Registered Sex Offender Counselor approved by his Community Corrects Office, and

evidenced by being unsuccessfully discharged from The Center for Healthy Sexuality Restitution and Responsibility Treatment Program on August 20, 2013 due to excessive absences;

- The defendant failed to pay a Sex Offender Supervision Fee of $5.00 per month through the Community Supervision and Corrections Department for the months of March, April, May, June, July, August, September and October 2013.

Appellant timely appealed.

## ISSUE ON APPEAL

In his sole issue, appellant contends that the trial court abused its discretion by revoking his community supervision because the State failed to prove by a preponderance of the evidence the six allegations that the trial court found to be true.

### A. Standard of Review

The trial court's decision on a motion for adjudication of guilt and to revoke deferred adjudication community supervision is reviewable in the same revocation of ordinary community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (West Supp. 2011). We review an order revoking community supervision for abuse of discretion. *Akbar v. State*, 190 S.W.3d 119, 122 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State must prove by a preponderance of the evidence that the person on community supervision violated a term of his supervision. *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). When the sufficiency of

the evidence is challenged, the evidence is viewed in a light most favorable to the trial court's findings. *See Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). The State meets it burden when the "greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision." *Akbar*, 190 S.W.3d at 123. "When a trial court finds several violations of community-supervision conditions, we will affirm the order revoking community supervision if the proof of any single allegation is sufficient." *Shah v. State*, 403 S.W.3d 29, 33 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see also Marcum v, State*, 983 S.W.2d 762, 766–67 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (recognizing that the State only need prove one violation of a condition of probation and that the failure of a defendant to report to his community supervision officer as instructed on one occasion is sufficient grounds for adjudication of guilt).

**B.    Failure to Report**

Appellant argues that the requirements\ that he report to his probation officer was unconstitutionally vague. Specifically, he argues that his right to due process was violated by the trial court adjudicating his guilt for violation of this allegedly vague condition:

> D.    Report, in person, to the Fort Bend County Community Supervision and Corrections Department during the normal working hours of said department, and on today's date and on the same date of

each month thereafter unless a different date,  within one calendar month is agreed to by  yourself and your Community Corrections Officer;  and obey all the rules and regulations of the Fort Bend County Community Supervision and Corrections Department;

Appellant cites several cases finding revocation of probation for failure to report to a community supervision officer to be an abuse of discretion because there was insufficient evidence about when and where the appellants in those cases were required to report.  *E.g., Cardona v. State*, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984) (reversing revocation of probation for failure to the Houston Regional Council on Alcoholism because the undisputed evidence showed appellant was unable to get information about where or when to attend, despite his repeated efforts); *Cotton v. State*, 472 S.W.2d 526, 527 (Tex. Crim. App. 1971) ("With regard to the failure to report to the probation department as directed, there is no evidence in the record as to when appellant was to report. Therefore, we conclude that the trial court abused its discretion in revoking probation on this ground."); *Harris v. State*, 608 S.W.2d 229, 230 (Tex. Crim. App. [panel op.] 1980) ("The order to revoke probation for violation of this condition cannot be sustained because this condition [stating only "report to probation officer as required"] is so vague and indefinite that it cannot be enforced; it does not inform the probationer with sufficient certainty of what he is to do.").

The State responds that (1) this argument was waived because it was not raised at the time of sentencing to preserve this argument, and (2) the reporting conditions were not vague.

Generally, a condition of probation cannot be challenged for the first time on appeal when no objection is made in the trial court. *Speth v. State*, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999); *Roberts v. State*, No. 12-01-00175-CR, 2002 WL 480608, at *1 (Tex. App.—Tyler March 28, 2002, no pet.) (mem. op.; not designated for publication). *But see Dansby v. State*, 448 S.W.3d 441, 449–50 (Tex. Crim. App. 2014) (when community supervision conditions do not put defendant on sufficient notice that he is waiving certain rights, complaint about condition may be raised for the first time on appeal).

We need not address the State's waiver argument because we agree with the State that the reporting condition was not unconstitutionally vague. Unlike the cases relied upon by appellant, the reporting condition here is more specific and similar to those that have been grounds for revocation of probation in other cases.

For example, in *Stephens v. State*, one of appellant's community service conditions was to:

> Report immediately in person on November 16, 1992 to the Harris County Adult Probation Department Intake Division, 49 San Jacinto Street, Houston, Texas and thereafter on the 16th of each month to your designated Probation Officer unless different dates within a calendar month are agreed to by you and your Probation Officer.

983 S.W.2d 27, 29 (Tex. App.—Houston [14th Dist.] 1998, no pet.). The appellant in that case argued that there was insufficient evidence that he violated this condition. Unlike the cases appellant cites, but similar to this case, the appellant Stephens did *not* claim that he did not understand the requirements to report:

> The conditions of his probation required that he report in person each month as indicated or as agreed to with his probation officer. Stephens' probation officer testified that he told Stephens he could pick the day he reported each month, but that he must report each month. In addition, the record shows that Stephens was fully aware of this requirement. Stephens also testified that his failure to appear was because he did not abide by his agreement to appear. He was not acting under a mistaken belief that he did not have to report in person each month.

*Id*. at 29–30. Likewise, here, appellant never claimed during the revocation hearing that he did not understand the reporting requirement; instead, he gave excuses about why he missed the appointments. The language and facts of the cases cited by appellant are inapposite.

Rather than claim he did not know when he was to report, in appellant's brief, he claims that "the evidence offered sufficient to satisfy the community corrections officer that he was ill and unable to report at times." But the trier of fact is the sole judge of credibility in a probation revocation proceeding, *Lopez v. State*, 46 S.W.3d 476, 482 (Tex. App.—Fort Worth 2001, pet. ref'd), and Olier testified that appellant did not provide him with the requested medical documentation that would have excused each of his absences.

Because the evidence demonstrates, by a preponderance of the evidence, that appellant knowingly failed "to report, in person, to the Fort Bend County Community Supervision and Corrections Department" on more than one occasion, the evidence is sufficient to support revocation of appellant's community supervision.

## C.  Other grounds

The trial court also cited numerous other grounds for revocation of appellant's probation, including failure to maintain suitable employment, failure to pay various fees, and failure to participate in and successfully complete a sex offender treatment program.  Appellant claims that the evidence shows that he was unable, rather than unwilling, to pay various fees.  But defendant himself testified that, although he was employed, he had not made any payments towards his delinquent fees and that he instead made the decision to *not* make any payments under he saved up "for a lump sum to get current."  Thus, the evidence does not support appellant's contention that he was "unable, not unwilling, to pay."

Appellant's brief does not address at all the trial court's findings related to his failure to participate in, or complete, his court-ordered sex offender treatment program.  *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).  For all of these reasons, we conclude that the trial court did not abuse its discretion in adjudicating appellant's guilt and finding that appellant violated at least one

condition of his community supervision. *See, e,g.*, *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980) ("There is one sufficient ground for revocation, the failure to report, and we do not need to address the other contentions raised since the one probation violation will support the court's order to revoke probation.").

We overrule appellant's single point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).